This was an ejectment brought in the Circuit Court of Bedford County, against the plaintiff in error, to recover possession of a certain tract of land, wherein a verdict and judgment was rendered in favor of *Page 76 
Greaves for the land in controversy, to reverse which this writ of error was prosecuted.
The whole case is set out in the following bill of exceptions to the opinion of the Inferior Court, overruling a motion for a new trial: "On the trial of this cause the defendant showed in evidence an older grant than that of the lessor of the plaintiff for the land in dispute, to wit: one dated in the year 1794, whereupon the lessor of the plaintiff produced in evidence the following entry, on which the grant is founded, the date of which is older than the date of the grant shown by the defendant, viz.: "Jonathan Greaves enters three thousand acres of land, 27th October, 1783, lying on the north side of Duck River, on the first creek above Spring Creek, beginning on said river three quarters of a mile below the mouth of said creek, running north and east for quantity." The grant which issued on this entry was dated in the year 1797; no marked corner or lines were proved to the tract of Greaves, except those made by James Bright, a deputy surveyor, when processioning Greaves's tract in the year 1808. The said Bright, in processioning aforesaid, made a beginning to said tract on the north bank of Duck River, three quarters of a mile, in a direct line below the mouth of the creek called for in said entry. The defendant's counsel insisted, on the trial, that the beginning of said survey, on the entry aforesaid, should have been three quarters of a mile below the mouth of said creek, emptying into Duck River, by a line drawn along the margin of the river, or three quarters of a mile below the mouth of said creek, following the meanders of the river, and not in a direct line, as it had been processioned. And the defendant gave evidence that, making that the point of beginning of said tract of Greaves, three quarters of a mile, following the meanders of the river, below the mouth of said creek, neither his house nor improvement would be included.
The defendant, by his counsel, prayed the Court, on the trial, to instruct the jury, in point of law, that the beginning of Greaves's survey should have been on the *Page 77 
north bank of Duck River, three quarters of a mile, following the meanders of said river, below the mouth of the creek called for in the entry, as emptying into Duck River, and not three quarters of a mile in a direct line below the mouth of said creek. But the Court instructed the jury that the beginning, according to the meaning of the entry, should be on the south bank of Duck River, three quarters of a mile, in a direct line, below the mouth of said creek; to which opinion of the Court, c.
Upon or accompanying the bill of exceptions appeared the following reasons for the opinion: —
1. Because, when distance from one point to another is mentioned, distance by a right line is meant, unless some expressions are made use of to show the distance is to be measured in a crooked line; and there is nothing in the plaintiff's entry to show that the three fourths of a mile is to be measured by meandering the river. The word "below" only shows the point of beginning to be on Duck River, below, and not above, the first creek above Spring Creek.
2. This cause is different from the case of Roberts v. Huff, in Hardin's Reports, 379; for there, in Spriggs's entry, a special beginning at two beech-trees, marked I. S., on the east side of Brashear's Creek, had been made; and the call about two miles below Harrod's trace on the creek was only directory to bring one into the neighborhood; and one-half mile, one way or the other, would make no difference; and the tree could be found by walking along the creek as well as by admeasurement. In that case it might with propriety be thought extraordinary to endeavor to find the tree marked I. S. by running a straight line through the woods. Here the point of beginning is to be found by measuring the distance from the creek.
Cooke, for the plaintiff in error. The plaintiff in this Court has assigned for error: —
1. The Court misdirected the jury; and,
2. The Court erred in overruling the motion for a new trial.
It having been determined by this Court that a *Page 78 
court of law have a right to go back as far as the entry, thereby making the entry a part of the legal title, I shall not now make any remarks upon that part of the case. Perhaps the particular statutory provisions upon the subject of our land-claims rendered such a decision perfectly justifiable. But it has always been understood that to support a title inejectment upon a younger grant, founded upon an older entry, proof should be exhibited to show that the one was really the foundation of the other. In this case there does not seem to have been any marked lines or corners designating the particular spot appropriated by the grant until some years after it had issued. It may become a question with this Court, how far it is necessary, in order to support a call like the present, to show an actual survey of the land, before the emanation of the grant, for the purpose of establishing that, in point of fact, the grant issued for the same identical tract of land called for in the entry.
But the principal point which I rely upon is this: That the Circuit Court erred in the directions they gave to the jury as to the manner of surveying Greaves's entry. The entry calls to lie "on the north bank of Duck River, on the first creek above Spring Creek, beginning on said river three-quarters of a mile below the mouth of said creek." Every entry ought to contain certainty to a common intent, and should comport, as far as practicable, with the intention of the locator. And the reason, in part, for this is that a subsequent locator may, with reasonable industry, find out and consequently avoid the particular spot located. Suppose a subsequent locator should go into that tract of country with the entry of Greaves in his hand, wishing to avoid an interference with it, what information would this entry convey? He would be informed that Greaves intended to lie on a creek on the north side of Duck River; but this information would not be sufficient. He would then necessarily direct his attention to the point of beginning mentioned in the entry. This call is three quarters of a mile below the mouth of the creek; and, upon observing this, he would inquire whether this *Page 79 
distance was to be run by a straight line or by a line meandering the river. Upon this subject I think the law has fixed a rule which would be the common understanding of every locator, — that a line meandering the river would be the most rational. It has been determined in Kentucky, where the system of land-law has been brought to greater certainty than it is here, that where an entry calls to begin at any given distance, say a mile, from a certain object, if the course is also given, the survey should be made in a direct line. But if the call is to begin one mile from a certain object on a water-course or trace, that the water-course or trace shall be meandered, unless some call in the entry restricts it. And the reason for this is obvious. Suppose I call to begin one mile below Nashville, on the Cumberland River, would I not necessarily mean a mile by pursuing its meanders? How could a subsequent locator in any other manner ascertain the point? He begins at Nashville, and is to run one mile below it to a point on the river; — which way is he to start? Can he ascertain the point on a direct line without first getting a compass and chain and taking the bearings and meanderings of the river? To suppose any other practicable mode would be absurd; and then I would ask whether the land-law ever meant to impose such an unreasonable degree of trouble and labor upon a subsequent locator? Besides, a subsequent locator would reasonably pursue the way which, in all probability, the first had. Which way did Greaves go in passing from the mouth of the creek to his point of beginning? Can any man suppose that he went otherwise than by meandering the river? If, then, it may be reasonably apprehended that such was Greaves's route, the burden of exploring any other ought not to be imposed upon a subsequent locator. The case of Roberts and Huff (Hardin's Rep. 379) was clearly misunderstood by the Circuit Judge; for, although the call in Spriggs's entry was for about two miles below where Harrod's trace crossed Brashear's Creek, and was, in that point of view, directory only, and not locative, yet the whole case will show that a great part of the opinion of the *Page 80 
Court was necessarily predicated upon the positions I have mentioned. Indeed it is expressly settled in that case that a subsequent explorer ought to pursue the meanders of the creek to find the point called for in Spriggs's entry; because, as that point was called for as being on the creek, it never could be found on a direct line without undergoing a degree of trouble and expense, which the law did not intend to impose.
Hayes and Whiteside, for the defendant. The case in Hardin's Reports, 379, has no application to this case; because the call in Spriggs's entry was evidently intended only to point out to a subsequent explorer of the country the neighborhood in which the land lay. Besides, in that case, the point on the creek, about two miles below the crossing of the creek, was further designated by a hunting camp and a tree marked I. S. thereby affording an easy and certain method of ascertaining the particular spot. The courts in that country have also decided that, in some cases, both course and distance shall give way to place; for instance, if an entry called to begin one mile south of Nashville, at a spring; now although the spring called for might not be exactly one mile south of the given point, yet if it was near to it, and was of such a description that by making a small and reasonable search it could be found, the entry would be valid, and the point of beginning would be where the spring in fact was found. This, no doubt, was the reason of the case of Roberts v. Huff, because the Court expressly decide that, inasmuch as the hunting-camp and marked tree might have been found by using a reasonable degree of industry, it was not material whether they were found at the end of two miles or not; more particularly as the call about excluded the idea of mathematical certainty.
In the present case we lay it down as undoubted law, that wherever distance is called for, it must be surveyed by a direct line, unless it appears from some other expression in the entry that a crooked line is intended. When distance from one place to another is mentioned, we do not understand by it that an uncertain *Page 81 
and devious course is to be adopted; nor is it so comprehended in any of the ordinary concerns between man and man. If a survey, or the lines in a grant or deed, call to run a given distance from one point to another, is it to be tolerated that any mode of surveying is intended and will be legal but by a direct line? And it can be no objection here that trouble and labor is imposed on a subsequent locator; nor can this consideration ever become of any importance in construing an entry. In every case more or less trouble must necessarily be imposed; and this Court can not say what degree of labor imposed upon a subsequent locator before he can find the land specified in the first entry shall make it void. If the Court could establish any rule upon such a subject, perhaps there would not be much impropriety in doing so; but that being utterly impossible, this part of Mr. Cooke's argument can have no weight. The true rule is, that the first entry, in order to make it a valid one, should be so made, that any person coming into the same tract of country may, by using reasonable and ordinary diligence and industry, be enabled with certainty to find the land located. If the means are certainly given him by which he has it in his power to find the land, that is all that the law can possibly require. In this ease the call in the entry is to begin "three quarters of a mile below the mouth of the creek." Now, although, in order to find the point on the river three quarters of a mile below the mouth of the creek, on a direct line, might possibly require some labor and trouble, such as first ascertaining the bearings and meanderings of the river; yet inasmuch as the information is so given that the point can be found, even to mathematical certainty, the objections of Burns can not prevail.
But whatever inferences may be drawn from the opinion of the Court, in the case of Roberts and Huff, we contend that they are entitled to no weight; because the courts of the country where that opinion was given have, upon other occasions, given a different determination. Hardin's Rep. 190. An entry was made calling for a marked tree fifteen miles from Pitman's *Page 82 
Station. It turned out that the tree claimed as the beginning was nine miles and a half, on a direct line, from the station, and thirteen miles and a half by pursuing the trace which, in point of fact, run from the station to the tree. The Court said that a subsequent explorer in quest of vacant land would have felt himself perfectly secure at the distance of nine or ten miles from the station; and the entry was upon that ground declared invalid. This opinion, therefore, so far contradicts the decision of Roberts and Huff that its authority is wholly destroyed.
Another reason why a direct line ought to be adopted as the rule of construction is, that from another call in the entry, to-wit: "on the first creek above Spring Creek," it evidently appears that Greaves intended, at all events, to include the creek. It does not appear from any evidence before this Court, but that a survey beginning at a point three quarters of a mile below the mouth of the creek, meandering the river, would throw him entirely off the creek. Whether this would be the result or not does not appear, but the Court ought not to give any opinion which, for anything that appears in the record, might so obviously pervert and destroy a certain and specific call in the entry.
Cooke, in reply. I do not know by what mathematical process Mr. Whiteside can discover that three quarters of a mile meandering the river would make the beginning point farther from the creek than a direct line. It seems to me that a right line, necessarily throwing the beginning at a greater distance from the mouth of the creek than a crooked line would, of the two, be much the more likely to produce the result so much deprecated by the counsel of. Greaves. If, however, I am mistaken in this and it was important to a proper construction of the defendant's entry, it was his duty to have shown by a survey, or other means, what would be the effect upon his other calls by meandering the river.
The case in Hardin's Reports, 190, is misunderstood by the defendant's counsel. The Court did not determine whether a right line or a line meandering *Page 83 
the trace would be the most proper, because by neither mode would the tree be found. If, however, the entry called for the tree as being thirteen and a half miles from the station, which is the distance by meandering the trace, and if in the entry there had-been any allusion to the trace, in this respect the entry would have been good. The Court admit that a subsequent locator would naturally enough have travelled along the trace; but there being nothing in the entry from which it might be inferred that distance along the trace was intended by the first locator, the trace not at all being named, the entry was therefore determined to be invalid.
It has been remarked that the entry of Greaves ought to be surveyed in a direct line from the mouth of the creek, because that is the most natural. And to obviate the objection that by doing so a subsequent locator would be put to unnecessary trouble and expense, it has been argued that inasmuch as the point, on a direct line, could be ascertained to mathematical certainty, therefore the entry is good, and ought to hold the land as surveyed. If we are to infer from this that where the means are given by which the beginning can be certainly found, the entry in all cases would be good, the gentlemen are surely mistaken. Suppose I call to begin one hundred miles south of Nashville. Now, although my beginning could be certainly found, yet still there is no court in the world who would say my entry was good.
I shall not now reurge any of the arguments I used in opening this case, because I do not expect that I can place them in any stronger point of view.
The question which is produced by the statement in this record is one of some consequence; and, as far as I know, unsettled in this State. I much regret the necessity of giving an opinion on it alone; and this regret is increased by the consideration that my opinion is different from that entertained by the judge *Page 84 
of the Circuit Court, in whose correctness I have great confidence. This difference of opinion would have induced me to postpone the decision, and thereby afford myself an additional opportunity of reviewing the grounds on which it rests; but my mind is so well satisfied upon the subject that it appears improbable delay would lead to a different determination.
The facts upon which the question of law arises are briefly these, as disclosed in a bill of exceptions:
Burne has the elder grant, to defeat which Greaves produced his entry, which is older than the grant of Burns. The entry calls for "three thousand acres of land lying on the north side of Duck River, on the first creek above Spring Creek, beginning on said river, three quarters of a mile below the mouth of said creek, running north and east for quantity." If this entry is what our laws call a special entry, and the grant founded upon it covers the same land called for in the entry, it seems not to be disputed, upon this record, but that Greaves has the best title to the land.
It seems to be admitted that the objects called for in the entry are sufficiently notorious to apprise subsequent enterers of the land intended to be appropriated by it On behalf of Burns, it is said that land is covered by the grant which is not included in the entry; that the land not appropriated by the entry is that on which he lives and has made his improvements. On the part of Greave it is insisted that no land is included in his grant but what is likewise covered by his entry.
The whole dispute ends in fixing the point of beginning. On the part of Burns the Court were prayed to instruct the jury that the beginning point must be on the north bank of the river, and that the three quarters of a mile must be measured meandering the river. The court directed the jury that the beginning must be fixed on the south bank of the river, three quarters of a mile in a direct line below the mouth of the creek. The correctness of this direction is the matter now to be examined.
The great object to be attained by an entry is reasonable notice to subsequent enterers what land has *Page 85 
been previously appropriated. When a court then is called upon to put a construction upon an entry, they ought to interpret it in the same way that a reasonable man, acquainted in the country where it lay, and wishing to enter land adjoining it, would do.
Suppose a man, with a copy of Greaves' entry, were to go upon the land which it calls to cover, with a view to enter land adjoining it, and not wishing to interfere with this entry; what would be the natural course of his reflections? He would look to the calls on the face of the entry. First, the land is to lie on the north side of Duck River. He would conclude these expressions excluded the idea of Greaves taking any land on the south side of the river, and that he would be perfectly safe if he entered land on the south side. Second, it is to lie on the first creek above Spring Creek. This he would conclude to be the creek on which the entry was located. But still he would be at a loss to know how far the entry would extend above and how far below the creek. And to remove this doubt he would look to the remaining call in the entry, "beginning three quarters of a mile below the mouth of said creek." Now what plan would he probably adopt to ascertain this distance? It seems to me he would never think of fixing the beginning point on the south, when the land was to lie on the north side of the river. He would fix the beginning on the north bank; and, to enable himself to ascertain the distance, he would naturally inquire how it was most probable the locator of Greaves' tract had proceeded to ascertain it, and then pursue the same plan. How would this be? Not, as it is believed, by the tedious process of running a direct line from the mouth of the creek, which might compel him to cross the river twice, but by travelling the most convenient way from the mouth of the creek, down the north side of the river the distance called for, and there he would stop. And if by running north from that point for his first line, and then east, and then south to the river, the creek would be included in the three thousand acres, he would most probably conclude that he would be safe in entering any of the lands adjoining *Page 86 
these lines. Yet I admit, if upon this plan the creek could not be included, it must, in my opinion, be so deviated from as to include the creek, which is the most notorious and locative call in the entry. But from what is before me, I must suppose that the creek would not be excluded, otherwise something would have been said in the record to that effect.
In support of the opinion of the Circuit Court it has been argued that the distance called for is directory to ascertain the beginning, and that, as no course is mentioned, the distance must be upon a direct line from the mouth of the creek. My opinion is that it is both directory and locative; that the whole entry must be considered together; and that when we do this the river is directory as to the course we must go when we attempt to run the distance called for. The entry, calling for the north. side of the river; the creek being on the north side, and the beginning being on the bank of the river, — taking all these expressions together, the subsequent locator would reasonably conclude the first locator intended to direct all mankind who wished to ascertain his beginning to go to the mouth of the creek, and travel down the north bank of the river three quarters of a mile, and there his point of beginning would be found.
I entirely agree with the Circuit Court in the opinion that when the distance between two given points is to be ascertained it must be by running a direct line, unless an intimation is given that a crooked line is intended. But I conceive that in this case there is no way to ascertain the second point but by running the line the distance called for, and, when we come to do that, the expressions in the entry are sufficient to show that a direct line was not intended. Hardin's Rep. 60, 432.
The judgment of the Circuit Court is therefore reversed, and the cause remanded for a new trial to be had, not inconsistent with the foregoing opinion.